WILLIAM E. SEWELL, RELATOR, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON, DEFENDANT.

Argued February 10, 1941—Decided February 21, 1941.

Before Justices CASE, DONGES and HEHER.

For the relator, *Jacob J. Levey, Irving Eisenberg* and *Frank J. V. Gimino.*

For the defendant, *J. Emil Walscheid.*

The opinion of the court was delivered by

CASE, J.   Relator seeks to compel the defendant, by writ of *mandamus,* to insert in its annual budget the sum of $200,000 for the expenses of the office of Superintendent of Elections and the further sum of $300,000 for the expenses of the office of Commissioner of Registration during the year 1941.

On June 24th, 1940, relator was, in joint session of the legislature, appointed Superintendent of Elections for Hudson County.   He took office forthwith and is now acting. Shortly thereafter the legislature amended *R. S.* 19:32-2 to provide that "all expenses of every nature in the office of the superintendent of elections shall not exceed the sum of $200,000 per annum."   At the same time *R. S.* 19:31-2 was amended to constitute the Superintendent of Elections the Commissioner of Registration and to limit the expenses in the office of the Commissioner of Registration to $300,000 for the year 1941 and $250,000 per annum thereafter.   On December 21st, 1940, relator submitted to the Board of

Chosen Freeholders of the County of Hudson his estimate
that for the year 1941 the office of Superintendent of Elec-
tions would need $200,000 and the office of Commissioner
of Registration would need $300,000—a total budgetary
request for the two departments of $500,000. That estimate
was in gross. There was no breakdown of the two lump sums
into component parts or subdivisions and no statement or
explanation of the uses to which the money would be applied.
Relator rested upon the statement with respect to each of said
sums that it was the amount which he "estimated will be the
necessary expenses incurred in running the office  *   *   *
for the year 1941;" except that he wrote a letter to defend-
ant's clerk suggesting that there be additional allowances of
$10,000 for "suitable quarters" and $25,000 for new equip-
ment.

Defendant conceived that it had the function of fixing an
amount within its discretion for the uses of relator's offices
and accordingly made a budget appropriation in the amount
of $184,000, a figure arbitrarily fixed in almost facsimile of
the amount of $183,804.24 reported to the Essex County
Board of Chosen Freeholders by the Superintendent of Elec-
tions and Commissioner of Registration of the County of
Essex as necessary to meet the requirements of those depart-
ments for the year 1941. Among defendant's exhibits is a
copy of the estimate submitted by the Essex County official
to his board showing in detail with respect to each office the
uses to which the requested funds were to be applied and the
estimated financial need for each use.

The position taken by the relator is that the legislative
mandate is such that the Board of Chosen Freeholders is
bound to appropriate to his use any sum up to the statutory
maximum that he requests; and that he is under no duty to
give to the board or, in pursuit of compulsory writ, to the
court any further or other information than that he thinks
he will need that much money. But that is not what the
statute says; and that, in our view, is not the law. The
statutory provisions are:

Section 3, chapter 165, *Pamph. L.* 1940 (being an amend-
ment of *R. S.* 19:32-2) provides:

"Each superintendent shall fix the salaries of the persons so appointed and such salaries certified to and approved under his hand shall be paid semi-monthly by the county treasurer of the county in which such persons are so engaged. All other necessary expenses incurred in carrying out the provisions of this Title when certified to and approved by the superintendent shall be paid by the county treasurer of the county in which the superintendent shall maintain his office; provided, however, that all expenses of every nature in the office of the superintendent of elections shall not exceed the sum of two hundred thousand dollars ($200,000) per annum commencing in the year one thousand nine hundred and forty-one and annually thereafter."

Section 1, chapter 165, *Pamph. L.* 1940 (being an amendment of *R. S.* 19:31-2) provides:

"All necessary expenses incurred, as and when certified and approved by the commissioner of registration in counties of the first class * * * shall be paid by the county treasurer of the county; provided, however, that all expenses of every nature in the office of the commissioner of registration in counties of the first class, exclusive of county board expenses, shall not exceed the sum of three hundred thousand dollars ($300,000) for the year one thousand nine hundred and forty-one and shall not exceed the sum of two hundred fifty thousand dollars ($250,000) per annum for each succeeding year thereafter."

The legislature obviously intended to, and did, place in the hands of one holding relator's position large determinative powers, including the hiring, the removal and the fixing of the number of and the compensation of his assistants. We must assume that a part of the legislative scheme was to prevent the offices of the Superintendent of Elections and the Commissioner of Registration from being financially crippled by an unsympathetic or a hostile board. But we find nothing in the statute to relieve relator from following the course, uniformly pursued by bureaus and departments, of listing in some detail, for the information of the appropriating body and the taxpaying public, the uses to which the moneys are to be applied and the amounts considered neces-

sary for those several uses. That information is surely due to the court by whose prerogative and mandatory writ relator seeks to compel, not the actual payment of an incurred debt or a due amount, but the raising of money to hold against a prospective need that is not made reasonably manifest.

Relator's argument, throughout, confuses his statutory authority to obligate the county with his duty, in seeking appropriation, to give reasonable forecast of the significance, in dollars, of respects in which he will exercise that authority. For illustration and not to state a definite legal requirement: He has the specific authority to appoint a chief deputy, a clerk, and a secretary and to fix their salaries. It is quite within reason that he should state the fact that he has appointed or will appoint those officers and what the salary requirements will be. He is authorized to appoint such other assistants as he may deem necessary and to fix their salaries. He should be able to forecast, reasonably, what sum will likely be needed for that purpose. So as to rent, equipment, supplies, communications expense, and the like. He must, in his own mind, have such a calculation, else he would not know that he will need $500,000, or having it, how to spread it through the year to meet all obligations. A budgetary forecast of his proposed disbursements is not inconsistent with his authority to disburse. Of the cases cited in relator's brief, *McDonald* v. *Board of Freeholders,* 99 *N. J. L.* 393, has as its main item of appropriation and the only one discussed in the opinion the salaries of the Superintendent of Elections and those appointed by him, the amounts of which were made known; *Angle* v. *Runyon,* 38 *Id.* 403; *Lindabury* v. *Freeholders of Ocean,* 47 *Id.* 417; *Irving* v. *Applegate,* 49 *Id.* 376, and *Knight* v. *Freeholders of Ocean,* 48 *Id.* 70, were on due claims, conclusively determined; *Kelley* v. *Board of Chosen Freeholders,* 118 *Id.* 450; *Shumar* v. *Applegate,* 51 *Id.* 117, and *State* v. *Freeholders of Hudson County,* 35 *Id.* 269, are not in point and give no support to the argument.

Reference to the opinion of the Supreme Court in the *McDonald* case, *supra* (the Supreme Court opinion is reported in 2 *N. J. Mis. R.* 46), discloses that McDonald, the then Superintendent of Elections for Hudson County, asked

the Board of Chosen Freeholders for an appropriation for the year 1924 of $112,200, which was his estimate of the moneys which he deemed necessary to carry on the work of his office. But the application gave in detail, as the files of the court clearly show, the items of that estimate as follows:

For Salaries:

| | |
|---|---:|
| One Supt. of Elections @ $5,000 per yr. | $5,000.00 |
| One Deputy Supt. of Elections @ $3,500 per yr. | 3,500.00 |
| One Secretary @ $2,400 per yr. | 2,400.00 |
| One Asst. Dep. Supt. @ $2,600 per yr. | 2,600.00 |
| One Asst. Dep. Supt. @ $2,200 per yr. | 2,200.00 |
| Forty-five Asst. Supts. @ $2,100 per yr. | 94,500.00 |
| | $110,200.00 |
| For Stationery, Supplies, &c. | 2,000.00 |
| Salaries | $110,200.00 |
| Supplies, &c. | 2,000.00 |
| Total | $112,200.00 |

Further, the obligations incurred by the Superintendent of Elections during the year 1923 which had not been honored by the Board of Chosen Freeholders and for which the superintendent sought a further appropriation were given person by person and month by month in an elaborate tabulation.

Until recently there was no statutory ceiling upon the expenditures of the superintendent and the commissioner. The legislation of last year, now effective for the first time, does impose a limit. The effect of the limitation, we think, is just that and nothing more, namely, a limitation. The board was not directed to appropriate the amount of the newly fixed maximum any more than it had theretofore been directed to appropriate any fixed amount. Sums had annually been appropriated; sums which ran higher, very much higher, than the amount now requested; but doubtless upon some particularized showing. We think that the board, lack-

ing more precise data from the relator, was not bound to appropriate blindly upon, and to the full extent of, his lump sum request.

The county, however, was also without sound basis in assuming that the needs of the Hudson County offices were the same as had been submitted in Essex County for related departmental use. Despite the somewhat larger population in Essex County the conditions are not necessarily the same. Defendant had in its files the record of preceding years, not only in totals but in minutiæ, because the bills had of course been paid one by one as they came in and duly classified. That information was available. The combined costs of operating the offices of the Commissioner of Registration and the Superintendent of Elections for the past ten years . follow:

| 1931 | ............ | $797,594.30 |
|------|--------------|-------------|
| 1932 | ............ | 788,414.60 |
| 1933 | ............ | 686,124.45 |
| 1934 | ............ | 642,872.60 |
| 1935 | ............ | 719,843.04 |
| 1936 | ............ | 873,246.68 |
| 1937 | ............ | 921,263.93 |
| 1938 | ............ | 724,534.03 |
| 1939 | ....... .... | 763,124.52 |
| 1940 | ............ | 740,934.04 |

Defendant had also the record of relator's actual financial performance for the last six months of 1940.

It is clear that the legislature intended that the two sets of offices should be maintained in such fashion as to enable them to function effectively toward the ends for which they were set up and that the Board of Freeholders should make provision for the reasonable financial requirements. We have not the precise and substantial facts that we would like. But the day is at hand when final action must be taken on the budget and a conclusion must be reached without delay. All things considered, we are of the opinion that need reasonably appears for an appropriation of $300,000 in place of the present budgetary item of $184,000. This result in nowise

affects such duty as the statute imposes upon the county to pay the claims incurred by the relator, as they come in with his certification and approval, even though they go to make a total outlay in excess of the appropriation; that phase of the law is not before us, and we do not pass thereon. Defendant's concession as to that principle of law is to be found in the allegation contained within its answer that it "has been advised that * * * such adoption of the county budget will not prevent an emergency appropriation or appropriations (40:2-31) as for purposes for which adequate provision was not made in said budget, if the need for such public expenditure shall be made to appear * * *."

A peremptory writ will issue directing the defendant to include an appropriation of $300,000 in accordance with this opinion; let it be allocated between the two departments in the same proportion as the statutory limitations, viz., $120,000 to the office of the Superintendent of Elections and $180,000 to the office of the Commissioner of Registration.