6 N.J. Super. 613 (1950)
70 A.2d 508
WILLIAM MacPHAIL AND WILLIAM BRADFORD, PLAINTIFFS,
v.
BOARD OF CHOSEN FREEHOLDERS OF HUDSON COUNTY AND FRANK J. FARLEY, COUNTY TREASURER, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 4, 1950.
*615 Messrs. J. George Fredman and Mortimer Neuman, for plaintiffs.
Messrs. Daniel T. O'Regan, County Counsel, and Frederick J. Gassert, County Attorney, for defendants.
BRENNAN, WM. J., JR., J.S.C.
When Hudson County in December, 1948, granted a cost of living bonus to county paid lower salaried employees, the 174 such salaried employees of the Commissioner of Registration and Superintendent of Elections were not included. Plaintiff MacPhail, the commissioner and superintendent, and plaintiff Bradford, one of the employees, bring this suit to compel such payment.
The case is at issue and both sides have moved for judgment. Plaintiffs' motion is for judgment on the pleadings and defendants' motion is for summary judgment.
The bonus paid was in the amount of $300 to each eligible full time employee. The County urges two reasons why MacPhail's employees are not paid the same bonus: (1) that the bonus act, Chapter 18 of the Laws of 1948 amending Chapter 404 of the Laws of 1941, does not cover MacPhail's employees, and (2) that in any event a bonus payment would violate R.S. 19:31-2 and R.S. 19:32-2 because it would cause the expenses of the offices of commissioner and superintendent to exceed the limitations of $260,000 and $320,000 prescribed by those statutes as the maximum to be spent in any year for "all expenses of every nature" in such respective offices.
Neither argument is soundly founded. The MacPhail employees may be granted the benefits of the bonus law and a *616 bonus payment thereunder is not an expense chargeable to the limitations set up in R.S. 19:31-2 and R.S. 19:32-2.
The office of superintendent of elections in first class counties was originally created by Chapter 9 of the Laws of 1923 and took its present form under Chapter 187 of the Laws of 1930. The latter statute also constituted the clerk of the County Board of Elections as the commissioner of registration. Both officials were given broad powers in respect of the appointment and separation of their personnel who by explicit direction were not to be "subject to any of the provisions of Title 11, Civil Service, but shall be in the unclassified service." The commissioner appoints his employees "temporarily" and in such number as in his judgment may be necessary. The superintendent likewise appoints such number of assistants as "he considers necessary."
Chapter 165 of the Laws of 1940 terminated the terms of office of the clerks of the county boards of first class counties as commissioners of registration and constituted the superintendents of election thereof as such commissioners. That statute also established ceiling limitations in respect of annual expenditures in the two offices. The statute reads in these particulars as follows:
"19:31-2. The commissioner of registration in counties of the first class, and the county board in all other counties, shall have power to appoint temporarily such number of persons as in his or its judgment may be necessary in order to carry out the provisions of this Title. Such persons when temporarily appointed shall not be subject to any of the provisions of Title 11, Civil Service, but shall be in the unclassified service.
"The commissioner of registration in counties of the first class, and the county board in all other counties, shall provide such printed forms, blanks, supplies and office telephone and transportation equipment and shall prescribe such reasonable rules and regulations as are necessary in the opinion of the commissioner or county board to carry out the provisions of this Title and any amendments or supplements thereto.
"All necessary expenses incurred, as and when certified and approved by the commissioner of registration in counties of the first class, and by the county board in all other counties, shall be paid by the county treasurer of the county, provided, however, that all expenses of every nature in the office of the commissioner of registration in counties of the first class, exclusive of county board expenses, shall not exceed *617 the sum of three hundred thousand dollars ($300,000.00) for the year one thousand nine hundred and forty-one and shall not exceed the sum of two hundred fifty thousand dollars ($250,000.00) per annum for each succeeding year thereafter."

* * * * * * *
"19:32-2. Each superintendent may appoint a chief deputy, a clerk, a secretary and any other assistants he considers necessary to carry out the provisions of this Title, and may remove the same when ever he deems it necessary. Those so appointed shall not be subject to any of the provisions of Title 11, Civil Service, but shall be in the unclassified service. Each superintendent shall fix the salaries of the persons so appointed and such salaries certified to and approved under his hand shall be paid semimonthly by the county treasurer of the county in which such persons are so engaged. All other necessary expenses incurred in carrying out the provisions of this Title when certified to and approved by the superintendent shall be paid by the county treasurer of the county in which the superintendent shall maintain his office; provided, however, that all expenses of every nature in the office of the superintendent of elections shall not exceed the sum of two hundred thousand dollars ($200,000.00) per annum commencing in the year one thousand nine hundred and forty-one and annually thereafter."
The present ceilings of $260,000 for the office of the commissioner and $320,000 for the office of superintendent were established by later amendments (L. 1941, c. 275, L. 1945, cc. 303 and 304).
The pertinent bonus law, Chapter 18 of the Laws of 1948, expressly provides that its benefits "shall extend to state employees whose compensation is paid in full by the county." Defendants concede that the MacPhail employees are state employees whose compensation is paid in full by Hudson County. However, they argue that the legislative history set forth above pertaining to the offices of commissioner and superintendent in first class counties evinces a firm legislative determination to deprive the counties of any right of administration of these offices and thus that their employees are disentitled to bonus benefits because Chapter 18 does not explicitly provide that "state employees" include the "employees of the offices of Commissioner of Registration and Superintendent of Elections of counties of the first class." Their brief summarizes their position as follows: "Remembering all the particular attention, all the powers and immunities *618 lavished upon these two offices through the few years of their existence, something more than a mere reference to a general class, of which employees of the offices are members, should be required before it can be assumed that the legislature intended that a provision of the general laws applicable to counties should extend to them."
Unquestionably the legislature did design these offices "in such fashion as to enable them to function effectively toward the ends for which they were set up" and "to prevent the offices from being financially crippled by an unsympathetic or a hostile" board of freeholders, and to this end delegated to the commissioner and superintendent "large determinative powers, including the hiring, the removal and the compensation of his assistants." Sewell v. Hudson County, 126 N.J.L. 186 (Sup. Ct. 1941).
This legislative plan, however, was not devised to set the employees of these offices in a class apart from other employees similarly situated. The offices were created and made largely free of county supervision for reasons related entirely to the conduct of the election process. See McDonald v. Board of Chosen Freeholders, 99 N.J.L. 393 (E. & A. 1924). The status accorded the employees and the conditions established as to their employment were not the reason for, but rather incidental to and in furtherance of, the statutory scheme for improving that process.
Where the legislature has intended that these employees be excepted from laws otherwise applicable to employees as a class, it has definitely said so. Thus the benefits of the civil service laws have been denied them by the express provisions above quoted, of the laws creating the offices.
It follows that the 1948 bonus law, covering as it does state employees generally whose compensation is paid in full by the county embraces those employees and they may be granted benefits thereunder since they are not expressly excepted therefrom, which is what the legislature obviously would have done if their exclusion was intended.
There can be no doubt that the exigencies which prompted passage of the bonus laws face these employees in common *619 with others in the low salary brackets. Those laws, as appears in the preamble of the original 1941 law, were enacted to permit the payment of cost of living bonuses to lower salaried public employees without creating a recurring expense, as would be the case if increases were made in their base salary rates. The need was great in view of rising living costs brought on by abnormal conditions, and indeed greater in 1948 than in 1941. The harassing pressure of these mounting costs was common to all in public service and bore with particular harshness upon these in the lower salary brackets. I am entirely satisfied that the legislature contemplated that the benefits of those laws might be extended as well to these county paid state employees as to all others otherwise eligible for them.
Defendants' last argument on this point requires but a few words. They refer to the provision of R.S. 19:31-2 relating to the office of commissioner of registration that "nothing in the provisions of subtitle 2 of the Title `Municipalities and Counties' shall in anywise be construed to affect, restrict or abridge the powers herein conferred on the commissioners in counties having a superintendent of elections." They suggest that the bonus laws are classified in said subtitle 2 and particularly as in R.S. 40:21-13 thereof. It is very doubtful that the laws are to be so classified. It may not be determinative of the question but it should be observed that they have been omitted by the Law Revision and Bill Drafting Commission from the Tables of Allocation of Statutes and have been categorized as temporary and executed acts. 1938-1949 Cumulative Table of Contents of General and Permanent Laws, Schedules 4, 11 and 15, Law Revision and Bill Drafting Commission.
In any event nothing in the bonus laws "affect, restrict or abridge" the commissioner's powers. They give him no authority to declare or initiate a bonus payment. That responsibility and authority are laid solely upon the board of chosen freeholders as the governing body of the county "charged with the duty of paying on behalf of the county" the salaries of the employees.
*620 There remains for consideration the argument that the payment of a bonus to the MacPhail employees would violate the expenditures ceiling limitations of R.S. 19:31-2 and R.S. 19:32-2. It is not challenged that this would be true if a bonus payment is an expense to be included in the computation of expenditures subject to the statutory limits because the unexpended balances of the 1948 appropriations are insufficient to defray the cost of a bonus. Plaintiffs argue, however, and I think soundly, that a bonus payment is not an expense governed by the ceilings because those ceilings apply only to expenditures incurred through some action of the commissioner and superintendent and do not embrace a bonus payment not within his power to initiate but made within the discretion of and by the board of chosen freeholders.
The crux of the problem is the interpretation of the words "all expenses of every nature in the office" of the commissioner and superintendent. The sweep of the words is very broad, but this fact alone is not determinative of their scope. The canon of construction applicable here is that recently pronounced by the Supreme Court in Hackensack Water Co. v. Ruta, 3 N.J. 139, at 147 (1949), where it is said:
"We gather the sense of a law from its object and the nature of the subject matter and the whole of the context and the acts in pari materia. The parts of a statute are to be reviewed in relation to the whole, and the motive which lead to the making of the law, and reconciled, if possible, to carry out the reasonably probable legislative policy. The general intention of the act controls the interpretation of its parts."
The "motive which led to the making of the law," at least in part, is readily discernible. The combined costs of operating these offices in Hudson County in the decade prior to 1940 ranged from a low of about $643,000 in 1934 to a high of $921,000 in 1937 and averaged $765,000 annually over the ten year span. Sewell v. Hudson County, supra, at page 192. Chapter 165 of the Laws of 1940 imposed a $500,000 limit for 1941 on the combined costs and one of $450,000 annually thereafter, since increased to the present $580,000. That statute also constituted the same official as both commissioner and superintendent. Obviously the legislature was determined *621 to bring these combined costs down and lodged the authority for both offices in a single individual in order readily to fix responsibility for obedience to the statutory mandate.
It is equally obvious that the expenditures to which that responsibility attached were only those within the official's ability to control. One superintendent and commissioner has been removed by the Governor for malfeasance in office in overexpending the statutory limits. Allan v. Durand, 137 N.J.L. 30 (Sup. Ct. 1948). The Governor's opinion and order in that matter, submitted to this Court by consent at the oral argument herein, show that the overexpenditures were for expenses actually incurred and expended by that officer. A finding of malfeasance could hardly have been justified if that had not been the case.
Moreover, it will be remembered that Chapter 165 amended R.S. 19:31-2 and R.S. 19:32-2 which are sections of the general election law. The office of superintendent had been in existence since 1923 and that of commissioner since 1930. The county is obligated by R.S. 19:6-21 to provide the commissioner (who was originally the clerk of the county board of elections as noted above) "with a suitable office, furniture and such other equipment * * * in the courthouse of the county * * * or in a building as near as possible adjacent thereto," and by R.S. 19:32-4 to provide the superintendent with suitable rooms for the transaction of business and to provide a proper place for the safe keeping of his records and papers.
These duties of the county were not affected by the enactment of Chapter 165. R.S. 19:6-21 and R.S. 19:32-4 were not repealed. Compliance by the county with these mandates as to the housing of these offices is still ordained and certainly it is plain that the outlay of expense necessary to the discharge of this duty is not subject to the ceiling limits.
Finally, it will be noted also that Chapter 165 throughout speaks of salaries "certified to and approved" by the official, and "all other necessary expenses incurred * * * when certified to and approved" by him. Indeed, the specified limits are as to expenses "in" the offices, not "of," or "in *622 connection with," or other expressions apt to embrace expenses growing out of the existence of the offices, however and by whomsoever incurred.
The foregoing considerations point plainly to the conclusion I reach that the expenditures encompassed within "all expenses of every nature" are only those within the control of the commissioner and superintendent.
The expense of a bonus payment is not within his control. He is powerless to declare and pay a bonus. Chapter 18 makes the board of chosen freeholders the sole repository of such power.
I thus conclude that the discretion of the board of freeholders may legally be exercised to pay a bonus under Chapter 18 of the Laws of 1948 to the employees of the commissioner and superintendent otherwise eligible therefor and that such a payment for 1948 would not violate the statutory limitations on expenditures "in" the offices of the commissioner and superintendent imposed by R.S. 19:31-2 and R.S. 19:32-2.
The relief sought by the complaint is that the court make a determination that the 174 employees of the commissioner and superintendent "are entitled" to the payment of the bonus and that the defendants "be ordered to pay" the same.
I do not think the facts warrant the order sought at this time. The right and power to grant and order a bonus is "in the discretion" of the board of chosen freeholders by the express terms of Chapter 18 of the Laws of 1948. The board's failure to declare and pay a bonus to these employees was premised, so far as appears, solely on doubts whether the bonus was legally payable. I will not conjecture as to the action which may be taken by the board now that the doubts as to the legality of a payment are resolved and may be eliminated from the board's consideration of the matter. The judgment will command the board to reconsider the matter and take such action in respect thereto consistent with this opinion as may be permitted by law. See Hackensack Water Co. v. Ruta, supra, page 148.
Plaintiff's motion is granted to the extent indicated and defendant's motion is denied.