LILLIAN M. TRAINOR, ET AL., PLAINTIFFS, v. BURLINGTON COUNTY BOARD OF CHOSEN FREEHOLDERS, ET AL., DEFENDANTS.

Superior Court of New Jersey
Law Division Burlington County

Decided February 4, 1986.

*John E. Harrington* for plaintiffs (Schlesinger, *Schlosser, Foy & Harrington,* attorneys).

*Michael Hogan* for defendant Burlington County Board of Chosen Freeholders.

*Donna Kelly-Boccher* for intervenor (*Irwin Kimmelman*, Attorney General of New Jersey, attorney).

HAINES, A.J.S.C.

The Burlington County Board of Elections certified its 1986 budget to the Burlington County Board of Freeholders on December 20, 1985. This action was then pending. The various issues raised were resolved, as reported in *Trainor v. Burlington County Board of Freeholders*, 200 *N.J.Super.* 288 (Law Div.1984) with the exception of plaintiffs' demand for a declaratory judgment determining the right of the freeholders to modify the certified budget. It is plaintiffs' position that the freeholders must accept the budget and appropriate money accordingly, that any challenge to the budget must be undertaken by filing an action in lieu of prerogative writs in this court, not by unilateral action of the freeholders.

In years past the freeholders have modified the election board's budget without objection because the latter has been unable to act. It has been deadlocked. The two Democrat members who would have objected were always frustrated by the vote of the two Republican members who did not object. A similar scenario is in progress this year. The freeholders admit that they are not in agreement with the certified budget and that the differences have not been resolved. The likelihood of a deadlocked election board with respect to the budget issue is high. Indeed, that board's deadlock caused this suit to be filed. *See Trainor, supra*, 200 *N.J.Super.* at 293–295. The freeholders will act on the budget tomorrow.

Relief by way of declaratory judgment is appropriate. The requirements are set forth in *N.J. Ass'n for Retarded Citizens v. Human Services*, 89 *N.J.* 234 (1982):

... we will render declaratory relief when there is an actual dispute between parties who have a sufficient stake in the outcome. We have discretion to issue a declaratory judgment when to do so would be just and fair.

The Declaratory Judgment Act, *N.J.S.A.* 2A:16-50 to -62 is remedial legislation entitled to liberal construction and administration, *N.J.S.A.* 2A:16-51. Its

purpose is to end uncertainty about the legal rights and duties of the parties to litigation in controversies which have not yet reached the stage at which the parties seek a coercive remedy. We have held that a declaratory judgment may be rendered under *N.J.S.A.* 2A:16–53 where there is an actual controversy between the parties which involves differing views on the meaning of applicable statutory provisions. [at 241–242; citations omitted]

Plaintiffs rely upon *N.J.S.A.* 19:45–4 which provides in pertinent part as follows:

All costs, charges and expenses incurred by the ... county board ... in carrying out the provisions of this title and the salaries of the members of the county board ..., salaries and compensation for extra service of the clerk and other employees of the county board ... shall be paid by the county upon certification by the ... county board....

This is the only provision in the election law relating to the present issue, an issue not previously addressed by the courts.

The board of elections is an autonomous body. *Trainor,* supra, 200 *N.J.Super.* at 296. Its members are appointed by the Governor. *N.J.S.A.* 19:6–18. Burlington County has an election board and a superintendent of elections. They are responsible for the proper conduct of all elections held in that county. Neither can operate without funds which must be provided by the board of freeholders. Thus, the statute provides that the election board's expenses *"shall be paid* by the county upon certification by the ... county board...." Emphasis supplied.

This arrangement is described in *Sewell v. Board of Chosen Freeholders of Hudson County,* 126 *N.J.L.* 186 (Sup. Ct.1941), in the case of superintendents of elections who are subject to a similar statute, as one designed "to prevent the offices of the Superintendent of Elections and Commissioner of Registration from being financially crippled by an unsympathetic or a hostile board." *Id.* at 189. The statute, therefore, must be read as *requiring* the board of freeholders to accept the election board's certified budget without modification and to appropriate funds accordingly, unless it successfully challenges the budget by proceedings filed in this court. The freeholders have had adequate time within which to commence such proceedings but have not done so.

This mandatory reading of the statute is confirmed by *Nolan v. Fitzpatrick*, 9 *N.J.* 477 (1952). In that case, the freeholders' proposed budget reduced the amount requisitioned by Hudson County Boulevard Commissioners from $800,000 to $175,534. The statute upon which the commissioners relied, *R.S.* 27:17-7, authorized the requisition and also provided that "[t]he board of chosen freeholders *shall cause* the amount to be raised and collected in the same manner as money for other county purposes and the monies thus raised shall remain in a fund in the hands of the county treasurer to be used for such purposes only...." Emphasis supplied. The Court said:

> The right of the boulevard commissioners to the requisitioned sum and the duty of the board of chosen freeholders to raise such sums correspond to the familiar right of each county to receive from the several municipalities within the county the sum requisitioned from each of such municipalities annually for county taxes. Nowhere in the act here in question is there any provision giving the board of chosen freeholders the power to review and approve or revise the amount requisitioned by the boulevard commissioners.... On the contrary, the situation here is similar to the annual requisition from each county board of school estimate, which is mandatory on the county, or the estimate for the use of the county mosquito extermination commission, which is likewise mandatory on the county....
>
> ....
>
> The legislature, where it desires to confide discretion to a board of chosen freeholders, has experienced no difficulty in finding apt language to do so. Where, as here, it has not only employed mandatory language with respect to appropriations but by the entire statutory scheme of relations between the boulevard commissioners and the board of chosen freeholders has indicated an intent to free the boulevard commissioners from responsibility to the board of chosen freeholders, it is not for us to question the wisdom of the legislative intent.... [at 482–484]

The board of elections cannot be controlled by the board of freeholders without thereby destroying the scheme of our election laws which require election machinery to be operated by independent entities. The power to modify the election board's budget is, like the power to tax, the power to destroy. The Legislature has not intended to provide freeholders with that power. It has intended the opposite.

The procedures by which the freeholders may challenge the election board's budget are set forth in *Keenan v. Bd. of Chosen Freeholders, County of Essex,* 105 *N.J.Super.* 271 (Law Div.1969). That case involved a suit by a commissioner of registration and superintendent of elections to require the freeholders to pay the certified expenses of his office. The court said:

> We are dealing, therefore, with a legislative policy clearly intent on guarding against any curtailment in the operation of the Commissioner's office by an interruption of funds—even at the risk of instances where some public monies may be irregularly disbursed until court determination as to the legality thereof is secured. The demands of procedural correctness here required the county to perform its unequivical duty to pay the certified necessary expenses and thereafter seek its revisions or deletions in an independently instituted action. [*Id.* at 283-284]

*See also Grosso v. Paterson,* 33 *N.J.* 477

The freeholders argue that *N.J.S.A.* 19:45-4 only mandates an appropriation to cover "expenses incurred," since that is the language of the statute, and that expenses "incurred" cannot be read to include estimated future expenses of the board of elections. This interpretation would cripple election operations. Almost all of the election board's expenses are estimates in one sense or another. Even fixed salaries of members of the board are not incurred in the event of a vacancy. Consequently, if the county's interpretation of the statute were correct, little money would have to be appropriated by the board of freeholders at the beginning of the fiscal year. The county does not suggest any method by which the board of elections could obtain money with which to operate as it "incurred" expenses or how the county would provide money to meet those expenses. The Legislature could not have intended a result which is patently absurd. *Marranca v. Harbo,* 41 *N.J.* 569, 574 (1964).

Plaintiffs express concern as to the enforcement of this ruling, anticipating a deadlocked election board. There are several answers. Plaintiffs themselves may proceed under the "Relief to Litigant" rule, *R.* 1:10-5. The master, previously

appointed in this proceeding to resolve the deadlock problems, may be authorized to enforce the ruling. The Attorney General, who has participated in these proceedings on his own behalf in order to ensure the sanctity of the election process in this county, may also move for enforcement.

The court will retain jurisdiction. This will permit further action to enforce the ruling, if needed, while also permitting the freeholders to file a counterclaim challenging the budget, if they wish to do so.